**BRITVIC SOFT DRINKS LTD., Plaintiff,**

v.

**ACSIS TECHNOLOGIES, INC., Defendant.**

No. CIV.A.01–2243–CM.

United States District Court, D. Kansas.

March 31, 2003.

1180

Patrick J. Whalen, Teresa A. Woody, Spencer, Fane, Britt & Browne, Kansas City, MO, for plaintiff.

Stanley D. Davis, Joseph G. Mayte, Mark Moedritzer, Shook, Hardy & Bacon, L.L.P., Kansas City, MO, for defendant.

## MEMORANDUM AND ORDER

MURGUIA, District Judge.

Pending before the court are plaintiff Britvic Soft Drinks Ltd.'s Motion for Partial Summary Judgment (Doc. 88) and Mo-

tion for Summary Judgment on Defendant's Counterclaims (Doc. 90). As set forth below, plaintiff's Motion for Partial Summary Judgment is denied and plaintiff's Motion for Summary Judgment on Defendant's Counterclaims is granted.

## I. Background [1]

This court exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1332. Plaintiff asserts seven causes of action arising from defendant's alleged breach of a Software Maintenance and Support Agreement (hereinafter "the Support Agreement") entered into by the parties on May 23, 2000. Plaintiff claims defendant breached the Support Agreement by failing to provide plaintiff with a software key that plaintiff needed to operate the version of defendant's software to which plaintiff was a licensee. Defendant brings counterclaims for misrepresentation and breach of the covenant of good faith and fair dealing, arising from plaintiff's alleged breach of an agreement reached by the parties on April 10, 2001 (hereinafter "the 2001 Agreement"). Defendant claims that, in the 2001 Agreement, the parties agreed to settle their dispute regarding the Support Agreement, and that plaintiff violated the 2001 Agreement by bringing this lawsuit. The parties stipulate that Kansas law governs the 2000 and 2001 agreements.

### A. The Support Agreement

The Support Agreement, drafted by defendant, was effective for a three-year term, after which it could be renewed automatically on a yearly basis (Def.'s Exh. to Consolidated Mem. in Opp'n, Exh. 3, ¶ 4). Under the Support Agreement, plaintiff

was to pay an annual fee to defendant on or before April 30 in order to obtain services and a software key for the following year. In December 2000, defendant notified plaintiff that on the April 30, 2001 anniversary date, defendant would only be required to provide a software key for Version 4.0 of the software, which was a more recent version of the software than Version 3.28, which plaintiff had been using. In a letter dated March 19, 2001, attorneys for defendant informed plaintiff of defendant's position that defendant was no longer required to provide telephone support or software keys to plaintiff for Version 3.28.

The Support Agreement does not contain language stating that software keys will be provided only for the current release of the software. Rather, the agreement provides that "[o]nce payment for the Annual Software Maintenance & Support Fee as listed in Appendix A has been received by ACSIS, an annual software license key (that allows Licensee to use the Software) will be issued to Licensee." Further, it provides that "On or at any time after the expiration of this Agreement, ACSIS may raise fees for support services, software maintenance, manuals and/or any other goods and services at ACSIS's sole discretion." (*Id.* at ¶ 9). Appendix A does not specify a version number of the software covered by the Support Agreement.

In support of its argument that it was required to provide a key only for Version 4.0, defendant cites Paragraph 7 of the Support Agreement, which provides in relevant part: "**Telephone support** will be provided only for the **current release** of

---

1. The court sets forth facts that are undisputed or are viewed in the light most favorable to defendant as the nonmoving party, with the exception that facts regarding defendant's affirmative defenses are viewed with recogni-

tion that defendant carries the burden to prove the affirmative defenses. Fed.R.Civ.P. 56. Further, the court sets forth facts relevant to both pending motions within the same section.

ACSIS Field Service 400 software modules listed herein under Appendix A of this Agreement, and for the previous release of such modules for a period of 180 days from the general availability of a new release." (*Id.* at ¶ 7) (emphasis added). Defendant also stated that it believed the Support Agreement required it to provide a key only for the most recent version of the software based upon the Agreement itself, "the 'sunsetting' of previous software versions inherent in the business relationships created by the [Support Agreement], and a general policy in place that software customers be on the most current version of the software to receive support and software keys." (Def.'s Consolidated Mem. in Opp., at 6).

### B. Escrow Agreement

After defendant informed plaintiff it was required to provide a key only for Version 4.0, the parties began to discuss three proposals by defendant that would enable plaintiff to obtain the software key for Version 3.28. On April 11, 2001, the parties entered into an escrow agreement which the parties signed on April 11, 2001. The Escrow Agreement provides, in part, that:

A. On or about May 23, 2000, ACSIS and Britvic entered into [the Support Agreement].

B. Under [the Support Agreement], ACSIS is to provide Britvic ongoing maintenance and support with respect to certain software which ACSIS has licensed to Britvic (the "Software"), in exchange for certain consideration to be paid by Britvic.

C. The parties are in dispute with respect to their rights under [the Support Agreement].

D. Britvic considers it essential to its business to ensure that the Software continues to function after April 30, 2001....[T]he parties wish to deposit certain items to be held in escrow by

Escrow Agent and then disbursed upon the occurrence of certain events to enable continued use of the Software.

E. ACSIS, Britvic and Escrow Agent now wish to execute and deliver this Escrow Agreement in order to effectuate the payment of funds and the issuance of certain items, as described in Exhibit A.

(Suggestions in Supp. of Pl.'s Mot. Summ. J. on Def.'s Countercls., Exh. F).

The Escrow Agreement then stated that plaintiff would provide the escrow agent with software keys that would work for Version 3.28 from April 21–May 20, 2001, and from May 21–June 20, 2001; ten-year software keys for Versions 3.28 and 4.0; and source code for Versions 3.28 and 4.0. The Escrow Agent was required to disburse these items upon receipt of three installments of $189,933.34 and payment of a $92,000 software support fee. (*Id.* at 2). Finally, the Escrow Agreement provided that "10. To the extent this Escrow Agreement and Exhibit A are, in any way, in conflict with each other, the terms of this Escrow Agreement shall control." (*Id.* at 3). Both parties fully performed under the Escrow Agreement—plaintiff paid all monies due and defendant provided the software keys and source code.

The Escrow Agreement contains no language expressly indicating that it constitutes a release by plaintiff of its right to bring any claims against defendant. Defendant never requested a release or settlement from plaintiff, because, according to defendant, defendant thought that a release was unnecessary because plaintiff had not brought a claim under the Support Agreement at that time. Further, plaintiff never told defendant that plaintiff was releasing its claims, and defendant never inquired whether plaintiff was releasing its claims. Defendant's chief operating offi-

cer, James Birch, stated he assumed the Escrow Agreement was a settlement of the dispute that had arisen regarding the Support Agreement. Further, defendant states it would not have entered into the Escrow Agreement if it had believed it would effect less than a full resolution of its claims. Specifically, Mr. Birch stated he believed that defendant was obtaining a release of claims under the Support Agreement due to the content of e-mails and other forms of correspondence between the parties.

Finally, the court notes that there is no other agreement that either of the parties contends constituted a settlement and release of any claim under the Support Agreement. Both parties were represented by counsel during the signing of the Escrow Agreement.

## II. Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Id.* (citing *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Id.* at 670–71. In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Id.* at 671 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505; *see Adler*, 144 F.3d at 671 n. 1 (concerning shifting burdens on summary judgment). The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505. Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.*

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut," rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex*, 477 U.S. at 327, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 1).

## III. Plaintiff's Motion for Partial Summary Judgment (Doc. 88)

Plaintiff requests the court to enter summary judgment as to the liability issues related to plaintiff's breach of contract claim, leaving damages to be determined by the court at a later time. The

court first examines defendant's affirmative defense of accord and satisfaction.

### A. Accord and Satisfaction

Defendant counters that the Escrow Agreement constituted an accord and satisfaction of the Support Agreement. Thus, according to defendant, plaintiff may not maintain a breach of contract claim based upon the Support Agreement.

### 1. Effect of Plaintiff's Failure to Include Defendant's Affirmative Defense of Accord and Satisfaction in Plaintiff's Suggestions in Support of its Motion for Partial Summary Judgment

■ Initially, defendant argues that, because plaintiff failed to address defendant's affirmative defense of accord and satisfaction in its motion for partial summary judgment, the court should deny plaintiff's motion. The court rejects defendant's argument, and finds that plaintiff is not procedurally barred from responding to defendant's accord and satisfaction argument in its reply because plaintiff failed to address it in its motion for partial summary judgment. The court finds that a moving party does not have the obligation to address every affirmative defense preserved by a nonmoving party in the pretrial order. Moreover, the fairness concerns addressed by courts refusing to hear new arguments in reply briefs are not implicated here, where defendant itself interposed the accord and satisfaction defense in its response brief.

### 2. Burden of Proof

■ "When a defendant pleads an accord and satisfaction in defense to the action against him, the burden is upon him to prove that defense" by a preponderance of the evidence. *Addis v. Bernardin, Inc.,* 226 Kan. 241, 243–44, 597 P.2d 250, 252–53 (1979) (citing 1 Am.Jur.2d, Accord and Satisfaction § 55, p. 353). At the summary judgment stage, however, "the moving party must show the absence of genuine issues of fact regarding each of the affirmative defenses specifically reserved by the non-moving party." *Conoco Inc. v. J.M. Huber Corp.,* 148 F.Supp.2d 1157, 1165 (D.Kan.2001), *aff'd,* 289 F.3d 819 (Fed.Cir. 2002) (citation omitted). Thus, plaintiff bears the burden to demonstrate that no genuine issues of material fact exist regarding defendant's affirmative defenses.

### 3. Standard

■ "An accord is a contract between creditor and debtor for the settlement of the claim by some performance other than that which is due. Satisfaction takes place when the accord is performed." *Thompson v. Meyers,* 211 Kan. 26, 32, 505 P.2d 680, 685 (1973) (citation omitted).

> To constitute an accord and satisfaction, there must be an offer in full satisfaction of an obligation, accompanied by such acts and declarations or made under such circumstances that the party to whom the offer is made is bound to understand that if he accepts the offer, it is in full satisfaction of and discharges the original obligation. An accord and satisfaction, as an adjustment of a disagreement as to what is due from one party to another through payment of an agreed amount, must be consummated by a meeting of the minds and accompanied by sufficient consideration.

*EF Hutton & Co. v. Heim,* 236 Kan. 603, 610, 694 P.2d 445, 451 (1985) (citations omitted).

### 4. Analysis

■ Plaintiff argues in its reply that no accord and satisfaction can exist, as a matter of law, because in the Escrow Agreement, plaintiff agreed to pay more money than that which it had previously agreed to pay. The court has reviewed the cases

cited by plaintiff for this proposition, and finds that none of them state that an accord and satisfaction can only exist when a party agrees to pay a lesser amount than that which it was already obligated to pay. In this case, there is evidence to support the argument that an accord and satisfaction existed, following the definition set forth in *Thompson*, *Heim*, and other cases. A rational jury may find the evidence supports the proposition that each party agreed to undertake an obligation different from that required by the Support Agreement. Specifically, defendant has set forth evidence indicating plaintiff agreed to pay a greater sum of money, while defendant agreed to provide plaintiff with a different set of keys than that provided by the Support Agreement.

Further, the court rejects plaintiff's contention that the court must find in favor of plaintiff on defendant's affirmative defense of accord and satisfaction, because the factual scenario before the court supports novation rather than accord and satisfaction. Novation "requires a showing of the following elements: (1) a previous valid contract; (2) agreement on a new contract; (3) validity of that new contract; and (4) intent to extinguish the old contract and substitute the new." *Barbara Oil Co. v. Kan. Gas Supply Corp.*, 250 Kan. 438, 454, 827 P.2d 24, 36 (1992) (citation omitted). The court finds that, although the facts may support novation, this does not preclude a finding of accord and satisfaction if defendant is able to prove all of the elements of that defense.

Next, plaintiff argues that accord and satisfaction is inapplicable because, as noted above, "[an accord is a contract between creditor and debtor for the settlement of [a] claim]," *Thompson*, 211 Kan. at 32, 505 P.2d at 685, and plaintiff has brought no "claim" to be satisfied through an accord and satisfaction. The court finds this argument unpersuasive, because the facts indicate that a dispute had arisen between the parties regarding their obligations under the Support Agreement. Furthermore, defendant argues that, in the Escrow Agreement, plaintiff waived its rights to enforce the Support Agreement. If defendant's contention is true, plaintiff waived its right to bring a claim under the Support Agreement through an accord and satisfaction reached in the Escrow Agreement.

The court finds that genuine issues of material fact exist regarding whether the Escrow Agreement constituted an accord and satisfaction. Although the Escrow Agreement contains a paragraph referring to the Support Agreement in existence between the parties, the Escrow Agreement contains no language describing the effect of the Escrow Agreement on the Support Agreement. Defendant has not demonstrated that the parties believed that, in signing the Escrow Agreement, plaintiff withdrew its rights to enforce the Support Agreement. Such questions raise factual issues for the jury, and the court cannot find, as a matter of law, that no accord and satisfaction existed between the parties. *Accord* 13 Corbin on Contracts § 1277, at 199 (interim ed. 2002) ("The question whether a payment, in money or by check, or other performance rendered by the obligor and later asserted to be in satisfaction, was so tendered to the claimant that he knew or should have known that it was tendered as full satisfaction, is a question of fact; and frequently the evidence is so conflicting or doubtful that it is a question for the jury."); *see also Scantlin v. Superior Homes, Inc.*, 6 Kan.App.2d 144, 150, 627 P.2d 825, 830 (1981).

The court finds that plaintiff has not met its burden to demonstrate an absence of genuine issues of fact regarding defendant's accord and satisfaction defense.

The court next examines the merits of plaintiff's breach of contract claim.

### B. Breach of Contract

 Specifically, plaintiff claims that defendant's failure to provide a software key to plaintiff for Version 3.28 of the software violated the Support Agreement. To prevail, plaintiff must establish that no genuine issues of material fact exist regarding any element of a breach of contract claim. The elements for a breach of contract claim are: (1) the existence of a contract between the parties; (2) consideration; (3) the plaintiff's performance or willingness to perform in compliance with the contract; (4) defendant's breach of the contract; and (5) that plaintiff was damaged by the breach. PIK—Civil 3d 124.01–A.

In the case at bar, the parties do not dispute the first two elements of the claim. However, defendant states that plaintiff cannot prove the third and fourth elements. According to defendant, plaintiff failed to perform in compliance with the Support Agreement when plaintiff failed to pay an annual fee to defendant on or before April 30, 2001, as required by that agreement. As such, according to defendant, defendant did not breach the contract because its obligation to provide a software key never became due. Plaintiff counters by stating that plaintiff paid the $664,000 required by the Escrow Agreement, in satisfaction of this obligation under the Support Agreement. Plaintiff also argues that payment of the fee due on April 30, 2001 would have been a futile act, and therefore not required under the law of anticipatory repudiation, because defendant already had stated it would not furnish a software key for the coming year.

Plaintiff also argues that no genuine issue of material fact exists regarding the fourth element: whether defendant breached the contract. Plaintiff points out that Paragraph 7 of the Support Agreement states that telephone support will only be provided for the current release of the software, and for the previous release of the software for a period of 180 days. According to plaintiff, Paragraph 7 discusses only defendant's obligation to provide telephone support, and includes no language regarding software keys. Therefore, plaintiff argues, defendant's obligation to provide software keys is not limited to only the most current version of the software. In addition, plaintiff states that the Support Agreement did not require plaintiff to upgrade to Version 4.0 in order to receive a software key. Plaintiff states that the only prerequisite set forth in that agreement is that plaintiff must pay defendant the rate set forth in the Support Agreement, citing the language of the agreement stating that "an annual software license key (that allows licensee to use the software) will be issued to licensee."

 "Whether a contract is ambiguous is a matter of law." *In re Estate of Sanders,* 261 Kan. 176, 181, 929 P.2d 153, 157–58 (1996). In determining whether a contract is ambiguous, the court "must give the language 'a natural and reasonable interpretation.'" *Weber v. Tillman,* 259 Kan. 457, 476, 913 P.2d 84 (1996). Here, the court finds the parties' contract creates an ambiguity regarding whether defendant was obligated to provide a software key for Version 3.28, and whether plaintiff was required to update to more recent versions of the software in order to continue receiving software keys. The absence of language describing these obligations leaves their contours unclear. Furthermore, the court is uncertain whether the language of Paragraph 7, regarding telephone support for "current" versions of the software, should be con-

strued to apply to the defendant's obligation to provide software keys.

The court finds that defendant has established a genuine issue of material fact regarding whether defendant breached the Support Agreement. Accordingly, the court denies plaintiff's motion for partial summary judgment on defendant's breach of contract claim.

### IV. Plaintiff's Motion for Summary Judgment on Defendant's Counterclaims (Doc. 90)

Plaintiff moves the court to enter summary judgment in favor of plaintiff regarding defendant's counterclaims of fraud and breach of the covenant of good faith and fair dealing.

#### A. Breach of the Covenant of Good Faith and Fair Dealing

 Initially, the court notes that defendant failed to respond to plaintiff's motion for summary judgment as it relates to defendant's counterclaim of breach of the covenant of good faith and fair dealing. In its motion, plaintiff contended that, as a matter of law, defendant could not establish the elements needed to prove a breach of this covenant. "[I]n order to prevail on an implied duty of good faith and fair dealing theory under Kansas law, plaintiffs must (1) plead a cause of action for 'breach of contract,' not a separate cause of action for 'breach of duty of good faith,' and (2) point to a term in the contract 'which the defendant[ ] allegedly violated by failing to abide by the good faith spirit of that term.'" *Wayman v. Amoco Oil Co.*, 923 F.Supp. 1322, 1359 (D.Kan.1996) (citation omitted). Here, neither party has asserted that the Escrow Agreement was breached. Accordingly, the court finds that defendant may not, as a matter of law, maintain a counterclaim for a breach of the covenant of good faith and fair dealing arising out of the Escrow Agreement. The court therefore enters summary judgment in favor of plaintiff on defendant's counterclaim of breach of the covenant of good faith and fair dealing.

#### B. Fraud

 To establish a cause of action for fraud, a claimant must show by clear and convincing evidence: (1) an untrue statement of fact; (2) known to be untrue by the party making it; (3) made with the intent to deceive or recklessly made with disregard for the truth; (4) justifiable reliance upon the statement by another party; and (5) damage to the party justifiably relying upon the statement. *Weigand v. Union Nat'l Bank of Wichita*, 227 Kan. 747, 753, 610 P.2d 572, 577 (1980).

In defendant's counterclaim, defendant argues that agents of plaintiff, Derek Harper and Ed Marquette, remarked during the negotiation of the Escrow Agreement that plaintiff was agreeing to a resolution of all disputes between the parties based upon the Support Agreement. Defendant contends that this statement constituted a misrepresentation because plaintiff later brought suit under the Support Agreement. In addition, defendant states plaintiff represented to defendant that the Escrow Agreement was merely a payment vehicle for carrying out an agreement based upon a prior agreement of the parties.

Plaintiff counters by stating that defendant cannot establish the elements of a fraud claim, and, as such, that summary judgment should be entered in favor of plaintiff. First, plaintiff states that the first element of a fraud claim is not satisfied, because plaintiff never represented that the Escrow Agreement constituted a settlement and release of claims under the Support Agreement. As set forth below, the court has consulted the portions of the record cited by the parties and concurs with plaintiff's assessment.

In particular, the statements identified by defendant as supporting the notion that Mr. Harper and Mr. Marquette represented that the Escrow Agreement resolved all disputes between the parties include Mr. Harper's statement "I trust that you will see our proposal of paying $142,450 by 30th April 2001 as our commitment to resolving this matter as soon as possible." Defendant also cited Mr. Harper's testimony in response to the question whether anyone from plaintiff communicated at any time to defendant "that this deal was not a resolution of all our disputes." Over an objection by plaintiff's counsel, Mr. Harper stated that an April 10 e-mail later memorialized in the Escrow Agreement provided that "as far as we were concerned we were under the original agreement to get the software keys. This was something completely separate over and above that." (Harper Depo. at 113). Further, in response to defendant's counsel's question, Mr. Harper stated "[i]t was communicated via the escrow agent as, well, whereby we actually removed wording within the escrow agreement regarding full and final settlement, actually stated the parties are still in dispute and ACSIS were aware and had a copy of that." (*Id.*).

▉▉▉▉ After relying upon the above statements to support the notion that plaintiff had represented it was agreeing to a settlement and release, defendant attempted in its response to establish that plaintiff had made such statements with the intent to deceive defendant. For that proposition, defendant cites the testimony of Mr. Marquette in response to the question whether the parties "still had other issues that they had not resolved at the time of the escrow agreement," that "Mr. Harper's e-mail I think pretty clearly said that there was an ultimate dispute between the parties over the propriety of…ACSIS's insistence on the payment of this money in order to continue to use the software they already paid for." (Mar-

quette Depo. at 36). Defendant also presents the self-serving testimony of defendant's attorney, Mark Moedritzer, who stated he "had several conversations with Mr. Marquette where we discussed the fact that the dispute had been resolved. But at no time did he ever say that he believed that it had not been resolved." (Moedritzer Depo. at 76). The court finds that Mr. Moedritzer's affidavit cannot, by itself, create a genuine issue of material fact. In evaluating a summary judgment motion, the court examines affidavits "based on personal knowledge and set[ing] forth facts that would be admissible in evidence," but does not consider "conclusory and self-serving affidavits." *Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir.2002) (citation omitted).

The court finds that, construing these facts in the light most favorable to defendant as the nonmoving party, no reasonable jury could find that plaintiff represented that the Escrow Agreement would constitute a settlement and release of plaintiff's claims under the Support Agreement.

▉▉▉▉ Second, plaintiff argues that, even if plaintiff had failed to inform defendant that the Escrow Agreement did not contain a settlement and release, defendant cannot establish a claim of fraud by silence. To establish a claim of fraud by silence, defendant in this case would have to show that (1) plaintiff had knowledge of material facts which defendant did not have and could not have discovered by the exercise of reasonable diligence; (2) plaintiff intentionally failed to communicate the material facts to defendant; (3) that plaintiff intended or had reason to expect that defendant would act in reliance upon plaintiff's non-disclosure; (4) that defendant justifiably relied upon plaintiff to communicate the material facts to defendant; and (5) that defendant sustained damages as a

result of plaintiff's failure to communicate the facts to defendant. *Safety Techs., L.C., v. Biotronix 2000, Inc.,* 136 F.Supp.2d 1169, 1173 (D.Kan.2001).

Plaintiff contends defendant can prove no set of facts indicating defendant justifiably relied upon the statements of plaintiff's counsel that the underlying dispute was resolved. Nor, according to plaintiff, did defendant justifiably rely upon plaintiff to provide defendant with information that plaintiff believed it retained the right to enforce the Support Agreement. Plaintiff points out that, as parties entering into an arms-length contractual relationship, plaintiff and defendant had no fiduciary relationship. Defendant does not dispute this argument; rather, defendant argues that plaintiff owed a duty because it possessed superior knowledge, or knowledge that was not within the reasonable reach of defendant—the knowledge that plaintiff would later seek to enforce its rights under the Support Agreement. *Zhu v. Countrywide Realty Co.,* 165 F.Supp.2d 1181, 1202 (D.Kan.2001).

Applying Kansas law, this court has rejected a similar argument raised by a party seeking to assert a claim of fraud by omission. In *Meschke v. OrthAlliance Inc.,* 2002 WL 1398635, at *2 (D.Kan. June 24, 2002), the court granted defendant's motion to dismiss plaintiff's claim of fraud by omission when neither party argued a fiduciary relationship was present, finding that neither party possessed special knowledge giving rise to a duty to disclose:

> The question of what gives rise to a legal or equitable obligation to communicate is not always an easy question to resolve, but generally the duty must arise from a relationship existing between the parties when the suppression or concealment is alleged to have occurred. It may arise between two contracting parties when there is a disparity of bargaining powers or of expertise

[or if] the parties to a bargain are in a fiduciary relationship to one another.... *DuShane v. Union Nat'l Bank,* 223 Kan. 755, 760, 576 P.2d 674 (1978) (citations omitted). The Supreme Court of Kansas subsequently wrote that a party to a transaction also has a duty to disclose material facts if he or she "knows that the other is about to enter into the transaction under a mistake as to such facts, and that the other, because of the relationship between them, the customs in the trade, or other objective circumstances, would reasonably expect a disclosure of such facts."

*OMI Holdings v. Howell,* 260 Kan. 305, 918 P.2d 1274 (1996) (quoting *Boegel v. Colorado Nat'l Bank of Denver,* 18 Kan. App.2d 546, 550, 857 P.2d 1362, rev. denied, 253 Kan. 856, 857 P.2d 1362 (1993)).

The court continued, finding that "[a]lthough plaintiff cites parts of Kansas cases indicating a duty may arise where one party has 'superior knowledge,' this by itself does not give a fair construction of the caselaw.... While the Kansas Supreme Court has written about a duty arising from special knowledge, this has been explicitly connected-as in the language quoted from both *OMI Holdings* and *DuShane* above-with the relationship between the parties, and whether there is a disparity of bargaining power or expertise reflected in the relationship." *Id.* After finding that the parties "were not fundamentally unequal in their bargaining or negotiating power," the court held that dismissal was appropriate. *Id.*

Here, both parties were represented by counsel during the negotiations and are sophisticated business entities. Defendant's argument that plaintiff possessed "superior knowledge" that it would later seek to enforce the Support Agreement is disingenuous. The court finds that, view-

ing the facts before it in the light most favorable to defendant as the nonmoving party, there is no genuine issue of material fact regarding whether plaintiff owed defendant a duty to advise defendant of any intention that plaintiff would seek to enforce the Support Agreement.

The court finds that defendant cannot show that plaintiff possessed superior knowledge to defendant, because both parties were capable of discussing the issue of whether the agreement constituted a settlement and release, and including such language in the agreement. The court determines that plaintiff has demonstrated that defendant's fraud counterclaim is precluded as a matter of law. There is no set of facts under which defendant can prove all of the elements required for a fraud claim by clear and convincing evidence. Accordingly, plaintiff's motion for summary judgment is granted as to defendants' counterclaims.

## V. Order

**IT IS THEREFORE ORDERED THAT** plaintiff's Motion for Partial Summary Judgment (Doc. 88) is denied.

**IT IS FURTHER ORDERED THAT** plaintiff's Motion for Summary Judgment on Defendant's Counterclaims (Doc. 90) is granted.