# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 09-1051

NATIONAL INSPECTION & REPAIRS, INC.,

*Plaintiff-Appellant,*

*v.*

GEORGE S. MAY INTERNATIONAL CO.,[1]

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 03 C 5529—**Blanche M. Manning**, *Judge.*

ARGUED SEPTEMBER 25, 2009—DECIDED APRIL 9, 2010

---

[1] Defendant William Doane did not participate in this appeal. He was dismissed without prejudice by the district court, "unless NIR [won] its appeal against May." However, we hold in this case that Doane is dismissed with prejudice pursuant to the joint motion of the parties filed after oral argument where NIR states that it will not re-file its claims against William Doane and wishes that those claims be treated as dismissed with prejudice. *See infra* Part II.A.

Before EASTERBROOK, *Chief Judge*, and KANNE and SYKES, *Circuit Judges*.

KANNE, *Circuit Judge*.  The central issue in this case is breach of contract. The plaintiff-appellant, National Inspection & Repairs, Inc. ("NIR"), is appealing the district court's decision to grant summary judgment to the defendant-appellee, rejecting NIR's claims for breach of contract, fraudulent misrepresentation, negligent misrepresentation, breach of fiduciary duty, and constructive fraud. A breach of contract claim is a double-edged sword to be advanced by a party at its own risk. Such a claim necessarily calls into question not only whether a breach occurred, but also, which party committed it. Because we find that it was NIR alone that breached the contract, we agree that summary judgment was appropriate.

## I. BACKGROUND

NIR is a heavy equipment and machinery inspection company based in Topeka, Kansas; NIR defines itself as a "trucking company" in its brief. An employee of NIR inadvertently rendered the company's accounting system, Quickbooks, inoperable, causing NIR to seek outside assistance to develop new systems for accounting and inventory controls. To that end, NIR's President, David Price, contacted George S. May International Company ("May"), a business consulting services company head-quartered in Park Ridge, Illinois.

At Price's request, and in accordance with May's stan-dard sales methodology, May provided NIR with a

Survey Analyst to perform an initial assessment of the business and to recommend potential service engagements. After Price reviewed and analyzed the assessment and recommendations, NIR and May executed a consulting services contract (the "agreement") on May 4, 1999. The agreement is formally referred to as "Authorization for Management Service and Method Payment."

The agreement provides that May will, "by discussions, recommendations and progress reports, keep the client informed as to its progress." (App. at 204.) It further provides:

> In order that there may be a continual meeting of the minds between the client and [May] and, particularly, in order that the continuation of [May's] services is at all times within the client's control, acceptance or rejection of all, or any part, of matters covered in discussions, recommendations and progress reports shall be by client's signature to Progress Reports of [May] under "Examined, Accepted and Approved," specifically excluding by designation any statement not approved.

*(Id.)*

The agreement also contains a restrictive covenant prohibiting NIR from hiring any of May's employees for one year from the date the agreement was executed. The

Project Director[2] expressly reviewed this provision with Price.

Additionally, the agreement provides that all Staff Members are under contract with May and are bonded to $500,000 for protection of clients.

After they executed the agreement, May's Project Director collaborated with NIR to provide a comprehensive list of mutually conceived and agreed-on programs. Two of the principal programs that Price agreed to were Managerial Control Accounting ("MCAP") and Profit and Expense Control ("PECP"). These two programs included forty-two sub-projects. Two of the sub-projects under MCAP are at issue in this litigation. Specifically, the goal of Project 2.3 required May to "identify critical process points and establish mechanisms for control over accuracy of the process," the primary objective of which was "to ensure accuracy of record keeping systems and to eliminate the possibility of fraud." (*Id*. at 236.) Project 2.8 provided that May would "[a]ssist in interviewing candidates for the position of NIR Controller." (*Id*.)

Also at issue are the actions taken by William Doane, a Staff Executive assigned to manage and implement the NIR project. Doane was the only May employee at NIR for 21 days of the 25-day consulting engagement, and this case turns primarily on factual issues regarding his role

---

[2] The Project Director was Vladimir Tigay. The role of the Project Director was to establish the framework for the project, assign the project Staff Executives, and oversee the Staff Executives. The Staff Executives were the on-site points of contact for day-to-day communications with the client.

and performance. In addition to other duties, Doane interviewed a number of candidates for the position of Controller pursuant to the provisions of Project 2.8. Although NIR disputes that Doane legitimately conducted these interviews, there is considerable evidence to support the contention that he did. Such evidence includes (1) Price's deposition stating that Doane was interviewing people and that the candidates' names were recorded in the personnel records (*Id.* at 66); (2) Price's deposition stating that Doane interviewed "nine or ten people" for the position of Controller (*Id.* at 68); (3) Doane's deposition stating that Price and another NIR employee attended some of the interviews (*Id.* at 326-27); and (4) a list of completed items in the final Progress Report, "examined, accepted, and approved" by Price, which included a line-item for project 2.8 noting interviews for the Controller position were completed on May 18, 19 and 24 (*Id.* at 281-82). Over the three-week engagement, May submitted five Progress Reports to NIR. Each report contained a list of all the defined projects, with status updates for each. Price "examined, accepted, and approved" every report. Upon the completion of the engagement, Price authored a letter to May in which he stated:

> I am satisfied with the work. My employees are trained in concepts established by your consultants and they are beginning to implement them. I believe that the various recommendations presented regarding savings for my company are realistic and several have been instituted.

(*Id.* at 283.)

Simultaneous with the termination of the engagement with May and in contravention of the agreement, Price hired Doane for the Controller position. (*Id*. at 231, 286, 287.) Price testified that Doane, in Price's presence but unbeknownst to Price at that time, conducted a fictitious one-way phone call, supposedly with high-level decision makers at May. Doane allegedly told Price during this telephone conversation that May officials orally released NIR from its contractual agreement not to hire May employees. Price never spoke directly with anyone at May other than Doane, and Price did not otherwise make any attempts to verify such a release. Further, Doane never told May that Price had hired him to work at NIR. When May eventually learned of Doane's resignation, it issued a termination letter dated July 21, 1999. The letter stated that Doane's employment was "considered terminated effective on [Doane's] last working date June 10, 1999." (*Id*. at 29.)

After the consulting engagement ended and while Doane was employed by NIR as NIR's Controller, NIR alleges that Doane stole money from the company. NIR asserts that Doane somehow laid the foundation while working for May to perpetrate his purported crimes at NIR. Because of Doane's actions, NIR claims to have lost hundreds of thousands of dollars; however, the district court noted that NIR did not specify how much was stolen and did not provide any credible evidence of its claim.

NIR asserts, among other claims, that May breached the contract by failing to "implement" its duties under the

agreement, and for negligently hiring and supervising Doane. In other words, the crux of NIR's argument is that May was required to take steps to ensure that Doane would be a suitable employee for NIR, even though NIR promised not to hire him.

May argues that it did not violate any provision of the agreement and is entitled to the district court's award of summary judgment in its favor.[3] We will address these arguments in turn.

## II. ANALYSIS

NIR argues on appeal that the district court erred in granting summary judgment for May. We review the grant of summary judgment *de novo*. *Trade Fin. Partners, LLC, v. AAR Corp.*, 573 F.3d 401, 406 (7th Cir. 2009). We draw all inferences in the light most favorable to NIR, the nonmoving party. *Lucero v. Nettle Creek Sch. Corp.*, 566 F.3d 720, 728 (7th Cir. 2009). We will affirm only if we find that there is no genuine issue as to any material fact and May is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Trade Fin. Partners,* 573 F.3d at 406. However, NIR must present something more than a mere scintilla

---

[3] May filed a counterclaim alleging that NIR breached the contract when it hired Doane. The district court granted May's motion for summary judgment on the counterclaim and noted the parties needed to set a hearing date for the prove-up of damages on the counterclaim. The counterclaim is not at issue on this appeal.

of evidence, *see Delta Consulting Group, Inc., v. R. Randle Constr., Inc.*, 554 F.3d 1133, 1137 (7th Cir. 2009), or "some metaphysical doubt as to the material facts" to survive summary judgment, *Springer v. Durflinger,* 518 F.3d 479, 484 (7th Cir. 2008) *(quoting Waukesha Foundry, Inc. v. Indus. Eng'g, Inc.*, 91 F.3d 1002, 1007 (7th Cir. 1996)). Although NIR raises a number of issues on appeal, the success or failure of these arguments ultimately hinges on which party breached the contract.

Initially, we address NIR's assertion that the district court misstated the standard of review for summary judgment, thereby leading to an outcome that would otherwise have been in NIR's favor. In doing so, we take notice of the fact that NIR took a portion of a quotation used by the district court out of context, and did not include the second half of the district court's sentence. This omission could have misled this court with respect to the summary judgment standard applied by the district court.

NIR referenced the district court's use of *Butts v. Aurora Health Care, Inc.*, 387 F.3d 921, 924 (7th Cir. 2004), and quoted, "The existence of a factual dispute is not sufficient to defeat a summary judgment motion." (Pl.'s Br. at 10.) However, the full quotation from the district court opinion goes on to state, "instead the non-moving party must present definite, competent evidence to rebut the movant's asserted facts." The district court's citation was preceded by an accurate and thorough analysis regarding the appropriate standard. As noted by the district court, there must be a genuine issue of *material* fact.

Fortunately, the misconstruction of the district court's analysis did not go unnoticed.

### A. Jurisdiction

Before we proceed to the merits of this appeal, we must first address the threshold matter of our jurisdiction. The district court dismissed two claims, one by each party, without prejudice and provided leave to reinstate them should this appeal fail, pursuant to Federal Rule of Civil Procedure 41.

For this court to have jurisdiction on appeal under 28 U.S.C. § 1291, the judgment by the district court must be final. 28 U.S.C. § 1291; *see ITOFCA, Inc. v. Megatrans Logistics, Inc.*, 235 F.3d 360, 363 (7th Cir. 2000). Whether the notice of appeal was timely depends on whether the dismissal was pursuant to Federal Rule of Civil Procedure 41(a)(1) or Rule 41(a)(2). Claims dismissed pursuant to Rule 41(a)(1) are complete on the dismissal without any action by the district judge. Fed. R. Civ. P. 41(a)(1). Conversely, claims dismissed pursuant to Rule 41(a)(2) require an order by the district judge to become final. Fed. R. Civ. P. 41(a)(2).

The parties were asked to submit supplemental memoranda in response to our concerns at oral argument regarding our jurisdiction. On October 9, 2009, they filed a joint supplemental brief. The parties stipulated that both claims were dismissed without prejudice pursuant to Rule 41(a)(1). The parties further acknowledge that a series of Seventh Circuit decisions "hold that the dis-

missal of one claim or theory without prejudice, with a right to reactivate that claim after an appeal on the remaining theories, makes the judgment non-final." *See First Health Group Corp. v. BCE Emergis Corp.*, 269 F.3d 800, 801 (7th Cir. 2001). At times, a partial final judgment for such a claim is authorized by Rule 54(b), although neither party suggests that Rule 54(b) is applicable here.

Instead, the parties argue that our precedent provides that if each party stipulates to dismiss its respective claim unconditionally so that it cannot be reinstated no matter what happens on appeal, the appeal is permitted to proceed. *See id.* at 802. At oral argument, counsel for May said it does not plan to pursue its claim. Additionally, both parties confirm in their joint brief that they will not pursue their respective claims.

Our precedent provides that when the party's counsel explicitly agrees at oral argument to treat the dismissal of the claim as having been with prejudice, our bar to jurisdiction is lifted. *JTC Petroleum Co. v. Piasa Motor Fuels, Inc.*, 190 F.3d 775, 776-77 (7th Cir. 1999). Here, the parties did not make such unequivocal statements of intent at oral argument. NIR never commented on its intentions regarding its dismissed claim. Counsel for May stated that May was not "planning on refiling." But it is not clear whether this statement should be interpreted as "we will absolutely not pursue the claim," or if the statement itself hedged on the outcome of the appeal—that is, "we do not *plan* to re-file, but if we lose (or think we will lose), we might re-file." In its joint brief, May states that it "unequivocally confirms its position that it will not

pursue" its claim. It should be noted, however, that this strongly worded statement was made after oral argument, when May had time to project its relative success on the appeal.

As a result, we must determine whether parties can stipulate to dismissal of their claims with prejudice *after* oral arguments. As noted above, the parties were not clear at oral argument with respect to their intent regarding the outstanding claims, thus prompting the request for supplemental memoranda. Jurisdiction is not something to be determined *post hoc*. But because we permitted the parties to submit a revised statement regarding their respective intent not to pursue these claims, and both parties have agreed not to pursue the claims, we may consider their position in conjunction with the original briefs filed.

We hold that the claims are dismissed with prejudice, and that we have jurisdiction. Accordingly, we will proceed to the merits of the appeal.

### B.  Count I—Breach of Contract

NIR argues, not without ambiguity, that the district court erred by granting summary judgment in favor of May on the breach of contract claim, because NIR presented triable issues regarding "two separate breaches" by May.

As to the first alleged breach, NIR claims that May failed to "implement" its "duties" under the agreement, because May was purportedly required to utilize due care and

diligence in fulfilling these so-called duties, and May acted negligently by not doing so. At both oral argument and in its brief, NIR appears to weave tort and contract claims together, or, as May argued, and we agree, NIR "wanders drunkenly" between theories. As an alternative basis for its first breach of contract claim, NIR argues that because May was performing "management services," May breached an implied warranty of workman-like performance and failed to exercise reasonable care.

The district court noted that NIR did not appear to assert a separate breach of warranty claim and did not provide notice in its amended complaint that it was seeking to assert such a claim. However, the district court also commented that May never argued that NIR's claim was not properly before the court. The district court then decided to address the claim. On appeal, May notes the district court's comments and argues in the alternative that implied warranties do not exist for "professional services" under Kansas law.

As evidence of these claims, NIR advances various arguments in an attempt to show a breach by claiming that May negligently hired and supervised Doane; however, May argues on appeal that NIR failed to make any claim in its complaint for negligent hiring of Doane and consequently may not seek to amend its complaint now.

In support of the second alleged breach, NIR argues that May breached the agreement by not securing a bond for Doane, and that the district court ruled improperly when it found that NIR did not suffer any attendant damages.

As an initial matter, both parties stipulate that Kansas law applies, and the district court appears to have applied Kansas law, so we will analyze this appeal accordingly. Under Kansas law, a breach of contract claim requires "(1) the existence of a contract between the parties; (2) consideration; (3) the plaintiff's performance or willingness to perform in compliance with the contract; (4) defendant's breach of the contract; and (5) that plaintiff was damaged by the breach." *Britvic Soft Drinks Ltd. v. ACSIS Tech., Inc.*, 265 F. Supp. 2d 1179, 1187 (D. Kan. 2003).

Because the first two elements of a breach are not in dispute, we begin with the third element—whether the plaintiff-appellant's performance or willingness to perform was in compliance with the contract. We find that NIR failed to comply with the agreement. The agreement expressly provides that NIR was prohibited from hiring any May employee within one year following the engagement. However, immediately upon the termination of the engagement, NIR hired Doane in direct contravention of the no-hire provision. Although the parties dispute Doane's exact hiring date, there is no question that it was within the year following the engagement.

We find it remarkable that NIR now attempts to blame May for its own contractual breach. As part of NIR's negligent hiring and supervision claims, NIR accuses May of failing to perform a background check on Doane. The district court commented that NIR did not expressly address in the argument section of its response its issue with May not performing a background check on

Doane. Nevertheless, the court addressed NIR's arguments when ruling on Counts II and III (Fraudulent and Negligent Misrepresentation). On appeal, however, NIR incorporates these arguments as a basis for its Count I breach of contract claim. We note that NIR claims May's "negligence" is a breach of an implied warranty, while at the same time it appears it is claiming an express breach of Projects 2.8 and 2.3 because of a failure to "implement" or "attain" some type of contractual obligation.

In other words, NIR flips its own breach of the no-hire provision on its head, and claims May's "negligence and misrepresentations" contributed to NIR's (improper) hiring of Doane, and breach of the agreement. But the record clearly indicates that it was *NIR* that did not perform a background check prior to hiring Doane. And, it was Price's decision to hire Doane; Price knew of the no-hire provision, but made no effort to directly verify Doane's employment status with May. The district court also correctly noted that, even if May had performed a criminal background check, there is nothing in the record indicating that Doane had any criminal history, thereby releasing May of any negligent hiring. (App. at 312 n.11.) Moreover, the record reveals that Price was satisfied with Doane's work as a May employee: he approved each progress report, he wrote a letter expressing satisfaction upon completion of the project, and he ultimately hired Doane. Because NIR breached the agreement by hiring Doane, its breach of contract claim fails.

As to the fourth element—whether May breached the contract—the district court granted summary judgment

for May "to the extent that NIR's breach of contract claim is based on a purported 'failure to implement.'" We agree with the district court. As the district court noted, NIR does not identify anything that May was required and later failed to "attain" or "implement." NIR apparently searches for support in the language contained in Projects 2.3 and 2.8, albeit in a different section of its appellate argument, and it also quotes a paragraph in the agreement that states: "For the guidance of Management Service Development and progress, the Staff will design an action program around each major objective sought. A major objective is attained through a precisely formulated phase or unit of Management Service termed a Project."

The district court found that this language was "completely devoid of any specificity or detail as to what May was supposed to do for NIR." At oral argument, the language was referred to by this court as "gobbledygook." But in tautological fashion NIR argues that, because *it* believes a "natural reading" of the agreement is that May had a duty to implement and attain various projects, it has raised a genuine issue of material fact. NIR fails to grasp that in order to survive summary judgment, it must point to a *specific* obligation that May failed to perform, and it cannot ask this court to speculate as to which provision or provisions May might have breached. *See Trade Fin. Partners*, 573 F.3d at 407 (*citing Argyropoulos v. City of Alton*, 539 F.3d 724, 732 (7th Cir. 2008)). Although we must and do consider all inferences in favor of NIR, we will not manufacture contractual obligations that are not found fairly in the text of the agreement or that simply do not exist. Further, the

contract makes clear that NIR was responsible for the ultimate success or failure of the procedures on which May consulted. The agreement provides:

> Achievements realized from Management Service work depend upon many factors, including human aptitudes and cooperation with the client's staff, which factors are not within the control of [May]. Therefore, it is understood and agreed that no express or implied warranty of any general or specific results shall apply to the work done under this agreement.

(App. at 204.) Without more, NIR's argument fails.

NIR asserts that its second breach of contract theory springs from both the fourth and fifth elements of contractual breach under Kansas law—breach by the defendant and damages to the plaintiff, respectively. It argues that May allegedly breached a general insurance policy provision covering all May employees up to $500,000. The district court again granted summary judgment in favor of May. We agree with the district court that "NIR failed to state how it was damaged by May's alleged failure to bond Doane," and we find that if there was any criminal activity by Doane it occurred after Doane left the employ of May and was hired by NIR.

Tangled in the previously discussed breach of contract claims, NIR asserts May was negligent and breached some form of implied warranties. The district court granted summary judgment in favor of May, finding (1) that NIR did not dispute May's disclaimer for such so-called warranties, and (2) that NIR did not identify any par-

ticular terms of the contract under which May failed to exercise due care or perform in a workmanlike manner. We agree.

NIR appears to tether its negligent hiring and supervision claims to its breach of an implied warranty argument, which in turn falls under the umbrella of the breach of contract claim that May failed to implement properly projects 2.3 and 2.8. As a result, it is difficult to determine at what point NIR is asserting an express versus an implied warranty, or whether it is proceeding under contract or tort law. Regardless, NIR argues that this court must follow Kansas law, which it argues permits a plaintiff to proceed in either contract or tort or both against any party providing "management services" for a failure to exercise due care and to provide the services in a workmanlike manner. *See Zenda Grain & Supply Co. v. Farmland Indus., Inc.*, 894 P.2d 881, 890 (Kan. Ct. App. 1995) ("'Where negligence on the part of the contractor results in a breach of the implied warranty, the breach may be tortious in origin, but it also gives rise to a cause of action *ex contractu*. An action in tort may likewise be available to the contractee and he may proceed against the contractor either in tort or in contract; or he may proceed on both theories.'" (*quoting Gilley v. Farmer*, 485 P.2d 1284, 1289 (Kan. 1971))).

The seminal case in Kansas dealing with the determination of whether a particular action is based in contract or tort is *Tamarac Development Co. v. Delamater, Freund & Associates, P.A.*, 675 P.2d 361 (Kan. 1984). In *Tamarac*, the Kansas Supreme Court noted, "We have consistently

held: The difference between a tort and contract action is that a breach of contract is a failure of performance of a duty arising or imposed by agreement; whereas, a tort is a violation of a duty imposed by law." *Id.* at 363 (internal quotation marks omitted*)*. In determining which standard should apply to different factual situations, the court provided:

> [C]ertain professionals, such as doctors and lawyers, are not subject to such an implied warranty. However, an architect and an engineer stand in much different posture as to insuring [sic] a given result than does a doctor or lawyer. The work performed by architects and engineers is an *exact science*; that performed by doctors and lawyers is not. A person who contracts with an architect or engineer for a building of a certain size and elevation has a right to expect an *exact result*. The duty of the architect is so strong and inherent in the task, we hold it gives rise to an implied warranty of workmanlike performance. An injured party under these circumstances may choose his remedy from express contract (if applicable), implied warranty or negligence.

*Id.* at 365. (citation omitted) (emphasis added).

Applying *Tamarac*, the Kansas Court of Appeals in *Zenda* held that "a contract providing for management services is subject to an implied warranty of workmanlike performance and must be performed skillfully, carefully, diligently, and in a workmanlike manner." 894 P.2d at 891.

NIR relies heavily on *Zenda* and its use of the term "management services." In *Zenda*, the term "management services" was ascribed to a contract where Zenda Grain & Supply Company literally "turned over management" of the company to Double Circle Farm Supply Company, the defendant. *Id*. at 885. Double Circle "installed" managers who actually "managed" the cooperative. *Id*. at 886.

NIR relies too blindly on the term "management service." Despite the fact that May repeatedly used this term in the agreement, unlike in *Zenda*, NIR did not outsource the actual management of its company to May. May simply assisted NIR on a number of projects that May recommended and to which NIR agreed. Nothing in the contract required May to produce an exact result. Instead, we find that May provided management consulting services that were of an imprecise nature. Additionally, according to the agreement, NIR maintained full review and decision-making authority over the entire engagement, and Price "examined, accepted and approved" all projects.

We find that there was no implied duty for May to exercise reasonable care or perform services in a workmanlike manner. Thus, the appropriate action in this case is in contract, not tort. Even if such a duty existed, we have already determined there was no negligence on May's part. NIR has failed to show that May failed to act with reasonable care.

Despite NIR's convoluted arguments for breach of contract, and in spite of taking all inferences in NIR's favor, we do not find any particular provision or theory

of which May clearly was in breach. On the other hand, we find that NIR violated the agreement by hiring Doane. Thus, we affirm the district court's granting summary judgment in favor of May on count I.

### C. Counts II through V

We also agree with the district court's ruling with respect to the remaining counts alleging fraudulent misrepresentation, negligent misrepresentation, breach of fiduciary duty, and constructive fraud, and see no value in simply restating the lower court's reasoning in connection with each count.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment in favor of May on all claims brought against it by NIR.