**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 7, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

QUINCEY GERALD KEELER,

      Plaintiff-Appellant,

v.

ARAMARK,

      Defendant,

and

HCA WESLEY,

      Defendant-Appellee.

No. 10-3214
(D.C. No. 6:09-CV-01356-MLB-KGG)
(D. Kan.)

---

**ORDER AND JUDGMENT**[*]

---

Before **HOLMES** and **McKAY**, Circuit Judges, **PORFILIO**, Senior
Circuit Judge.

---

Quincey Gerald Keeler appeals from the district court's judgment in favor

of defendant Wesley Medical Center, named as "HCI Wesley" in the complaint,

---

[*]    After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is
therefore ordered submitted without oral argument. This order and judgment is
not binding precedent, except under the doctrines of law of the case, res judicata,
and collateral estoppel. It may be cited, however, for its persuasive value
consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

on claims the court construed as breach of contract, hostile work environment, negligence, and invasion of privacy. The district court certified its judgment for immediate appeal pursuant to Federal Rule of Civil Procedure 54(b). We have jurisdiction under 28 U.S.C. § 1291 and affirm.

## I. Background

Mr. Keeler, an African-American, was employed by defendant Aramark Healthcare Support Services, LLC, as a food services worker.[1] Aramark provided cafeteria services at Wesley, a hospital facility in Wichita, Kansas. In his amended complaint in this action, Mr. Keeler asserted forty-four claims. Most of those were against Aramark and included claims of racial discrimination, gender discrimination, hostile work environment, retaliation, breach of contract, defamation, violation of the Fair Labor Standards Act, and various torts. In three of his claims, Mr. Keeler named Wesley as a defendant and made reference to breach of contract; hostile work environment; negligent retention, supervision, training, and investigation; conspiracy to harm employment; invasion of privacy; and duty of care. Wesley filed a motion to dismiss, raising a number of grounds. Mr. Keeler filed a response containing materials outside the pleadings. Wesley filed a reply, and Mr. Keeler filed a surreply. Because Mr. Keeler had attached materials outside the pleadings, the court asked him whether he preferred to

---

[1]    In its answer to Mr. Keeler's complaint, Aramark noted that it was erroneously named in the complaint as simply "Aramark" and referred to itself as Aramark Healthcare Support Services, LLC.

withdraw the exhibits or have the court convert Wesley's motion to dismiss into one for summary judgment. He requested conversion and also filed his own motion for summary judgment. Wesley filed a response to that motion on July 23, 2010. Mr. Keeler did not file a reply in support of his own motion.

In an order filed August 12, 2010, the district court granted Wesley's motion for summary judgment and denied Mr. Keeler's motion for summary judgment. The court first ruled that it would not consider any of the exhibits Mr. Keeler attached to his summary judgment motion or his responses to Wesley's motion, which included a partial copy of Wesley's "Code of Conduct" that Mr. Keeler printed from a website, because they were not authenticated or in the form of, or accompanied by, a sworn affidavit.[2] The court also noted that, even if it considered the exhibits, it would not change the result.

The district court then considered Mr. Keeler's breach of contract claim, which was premised on Wesley's failure to investigate his claim that Aramark created a hostile work environment. Mr. Keeler claimed that this failure to investigate breached Wesley's obligation under the Code of Conduct to provide a discrimination-free work environment. He also argued, in his summary judgment motion, that he was a Wesley employee by virtue of the fact that the Code of Conduct states that it applies to Wesley's "subcontractors" and "colleagues." R.

---

[2] The "Code of Conduct" is that of HCA Inc, *see* R. at 108-09, with which Wesley is affiliated.

at 134 (typeface altered).  The court concluded that Mr. Keeler failed to establish the existence of a contract between Wesley and him.  *See id.* at 237-38 (relying on *Britvic Soft Drinks, Ltd. v. ACSIS Techs., Inc.*, 265 F. Supp. 2d 1179, 1187, (D. Kan. 2003) (listing elements of breach-of-contract claim under Kansas law, which include "the existence of a contract between the parties").  First, the court reasoned that it could not consider the Code of Conduct because of Mr. Keeler's failure to authenticate the copy he submitted.  Second, and apparently in the alternative, the court determined that Mr. Keeler failed "to establish that he in fact was presented with the Code of Conduct from an individual employed by Wesley."  R. at 237.  And third, the court observed that Mr. Keeler failed to show "that he signed the acknowledgment as required by the Code of Conduct."  *Id.* "Essentially," the court concluded, Mr. Keeler was "not a Wesley employee" and "there [was] no evidence of an agreement between [him] and Wesley to enter into a contract."  *Id.* at 237-38.

Next, "out of an abundance of caution," *id.* at 238 n.4, the district court construed Mr. Keeler's reference to a hostile work environment as a claim arising under Title VII.  The court concluded that it lacked jurisdiction because Mr. Keeler failed to name Wesley in the charges of discrimination he filed against Aramark with the Kansas Human Rights Commission and therefore had not exhausted his claim.  *See id.* at 238.

The district court then considered three of Mr. Keeler's negligence claims. First, the court determined that his claim of negligent supervision, which was based on Wesley's failure to investigate complaints he made to Wesley's management regarding his allegedly hostile work environment, failed under Kansas law because Mr. Keeler did not identify any Wesley employee who caused him harm by allegedly failing to investigate those claims. *See id.* at 239 (relying on *Estate of Sisk v. Manzanares*, 262 F. Supp. 2d 1162, 1187 (D. Kan. 2002), quoting *Kan. State Bank & Trust Co. v. Specialized Transp. Servs., Inc.*, 819 P.2d 587, 598 (Kan. 1991), for the principle that, to the extent Kansas recognizes a claim of negligent supervision, a plaintiff must show that "the employer had reason to believe that an undue risk of harm to others would exist as a result of the employment of the alleged tortfeasor" and "such harm . . . is within the risk"). Second, based on the same failure to identify any Wesley employee who caused him harm, the district court granted summary judgment to Wesley on Mr. Keeler's claim of negligent retention, as Kansas law required him to show "that Wesley has retained an employee that it knows or should have known is incompetent." R. at 239 (citing *Beam v. Concord Hospitality, Inc.*, 873 F. Supp. 491, 503 (D. Kan. 1994)). And third, with regard to Mr. Keeler's claim that Wesley was negligent in training its employees how to handle claims that its Code of Conduct had been violated, the district court determined that he had not "establish[ed] that Wesley had a reason to believe that its employees were not properly trained," as

required under Kansas law.  R. at 239 (relying on *Thomas v. Cnty. Comm'rs*, 198 P.3d 182 (Kan. App. 2008)).

The district court next considered Mr. Keeler's claim that Wesley invaded his privacy by aiding Aramark in its investigation of his alleged food theft.  The court concluded that Wesley was entitled to summary judgment on this claim because Mr. Keeler had not established one of the elements of such a claim, "that Wesley made any sort of publication concerning plaintiff to a third party." R. at 240 (relying on *Castleberry v. Boeing Co.*, 880 F. Supp. 1435, 1442 (D. Kan. 1995), for elements of invasion-of-privacy claim under Kansas law).

Finally, the court construed Mr. Keeler's claim that Wesley was negligent in failing to investigate the allegations of mistreatment he made against Aramark as a claim of simple negligence.  So doing, the court concluded that Mr. Keeler had presented no evidence showing that Wesley had a duty to investigate his allegations against Aramark or that Wesley caused him any injury.  *See* R. at 240-41 (relying on *Nolde v. Hamm Asphalt, Inc.*, 202 F. Supp. 2d 1257, 1261 (D. Kan. 2002), for the rule that, "[t]o recover for negligence [under Kansas law], the plaintiff must prove the existence of a duty, breach of that duty, injury, and a causal connection between the duty breached and the injury suffered").  This appeal followed.

## II. Discussion

"On cross-motions for summary judgment, our review of the summary judgment record is de novo and we must view the inferences to be drawn from affidavits, attached exhibits and depositions in the light most favorable to the party that did not prevail." *Allen v. Sybase, Inc.*, 468 F.3d 642, 649 (10th Cir. 2006) (quotation omitted). A court "shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[3]

We first consider two procedural arguments Mr. Keeler makes—that the district court should have advised him of the requirement to authenticate his exhibits when it asked his preference on converting Wesley's motion to dismiss into one for summary judgment, and that the court erred in ruling on the summary judgment motions before he had the opportunity to file a reply in support of his own motion. He contends that, in his reply, he planned to authenticate the documents he had submitted to the court in his previous summary-judgment filings and submit additional evidence.

Both arguments lack merit. First, although courts afford a pro se litigant's filings some leniency, they have no obligation to advise such a litigant of the

---

[3] Effective December 1, 2010, Rule 56 was amended. Among other changes, the standard for summary judgment was moved from subdivision (c) to subdivision (a), and its wording changed from "genuine issue" to "genuine dispute." However, "[t]he standard for granting summary judgment remains unchanged." Rule 56 advisory committee's note (2010 Amendments).

authentication requirement, for even pro se litigants are expected to "follow the same rules of procedure that govern other litigants." *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (quotation omitted). Second, on July 23, 2010, Wesley filed its response to Mr. Keeler's summary judgment motion and served it to Mr. Keeler by first-class mail. Under the applicable local rule, Mr. Keeler's reply was due fourteen days later, on August 6, 2010. *See* D. Kan. Rule 6.1(d)(2) (2010) ("Replies must be filed and served within 14 days of the service of the response."); *see id.* 6.1(d) ("These time periods include the additional 3-day period allowed under Fed. R. Civ. P. 6(d) and, therefore, apply regardless of the method of service."). Mr. Keeler did not file a reply by that date or request an extension of time. Therefore, the district court's August 12 decision was not issued prior to the expiration of his time to file a reply. Mr. Keeler states that he thought he had until August 16 to file a reply but admits he was operating under a prior version of the local rule, which set a twenty-three day period for filing a reply. He claims he did not know the rule had been changed and argues that, because the rule book does not contain a warning that the rules can be amended annually, his failure to file a timely reply should be excused, and this court should consider exhibits he would have filed with his reply. We reject this contention for the same reason we concluded the district court had no obligation to inform him of the authentication requirement—even pro se litigants are expected to know

and follow basic procedural rules. *See Kay*, 500 F.3d at 1218. Accordingly, we see no merit to his claims of procedural error.

Next, having reviewed the parties' arguments on the merits (including the audio-taped argument Mr. Keeler submitted to this court), the record, and the applicable law, we conclude that, for substantially the same reasons set forth in the district court's Memorandum and Order filed August 12, 2010, Wesley was entitled to summary judgment on Mr. Keeler's claims of breach of contract, negligence, and invasion of privacy. As to his hostile work environment claim, Mr. Keeler insists that it was based on Wesley's Code of Conduct and not, as the district construed it, on Title VII. *See* Aplt. Opening Br. at 6, 14; Aplt. Reply at 2, 11. Considering his pro se status, we commend the court for its cautious interpretation of Mr. Keeler's claims, but we will respect Mr. Keeler's view of his own claim. As we understand it, he claims that Wesley's failure to investigate the complaints he filed about his treatment by fellow Aramark employees was a breach of Wesley's obligations to him under its Code of Conduct and contributed to a hostile work environment. So construed, the claim is no different than the breach-of-contract claim discussed above and fails for the same reasons stated by the district court. *See* R. at 237-38.

Mr. Keeler also complains that the district court failed to consider his claims that Wesley and Aramark entered into a "conspiracy to harm employment." Aplt. Opening Br. at 10 (typeface altered). As best we understand it,

Mr. Keeler's "conspiracy" theory is that neither Wesley nor Aramark investigated his complaints about alleged mistreatment and retaliation by his Aramark coworkers, *see id.*, and Wesley's failure to investigate allowed him to be subject to a hostile work environment, *see* R. at 57. Having reviewed his amended complaint and other filings, we see no sufficient allegations that Wesley and Aramark entered into a conspiracy to harm Mr. Keeler's employment, let alone any evidence that might permit Mr. Keeler to survive summary judgment on such a claim. Therefore, any error in the district court's failure to discuss his "conspiracy" claims was harmless.

Finally, Mr. Keeler complains that the district court erred in failing to consider his claims of retaliation, harassment, and duty of care. Aplt. Opening Br. at 8, 11. These claims, however, are premised on the existence of a contract between Wesley and Mr. Keeler and therefore fail for the same reasons stated by the district court discussed above.

### III. Conclusion

For the foregoing reasons, the judgment of the district court is AFFIRMED. Mr. Keeler's motion for this court to review his audio tape is GRANTED.

Entered for the Court

Jerome A. Holmes
Circuit Judge

-10-