NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued February 12, 2015
Decided July 23, 2015

FRANK H. EASTERBROOK, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

Nos. 14-1274 and 14-2497

| | |
|---|---|
| BALSHE LLC, et al., | Appeals from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *Plaintiffs-Appellees*, | |
| *v.* | |
| | No. 12 CV 966 |
| ALAN J. ROSS, doing business as SAVE ASSOCIATES, | **James B. Zagel**, |
| *Defendant-Appellant*. | *Judge*. |

**O R D E R**

Plaintiffs Balshe LLC, The Simon Law Firm, and Meyer-Chatfield Corporation sued defendant Alan Ross for violating the terms of a settlement agreement that resolved a 2008 suit between the parties over a patent for life insurance bundling. The district court granted summary judgment to plaintiffs and awarded roughly $250,000 in damages. Ross appeals on numerous grounds. We affirm.

I.  *Factual and Procedural Background*

At the heart of the parties' dispute is the right to practice a patent for a method of pooling life insurance policies. Life insurance, like all insurance, spreads an uncertain risk of loss among a group of insureds. Ross claimed an invention "developed to be the opposite of risk spreading insurance." His business method turns life insurance into an investment vehicle by forming a trust from pooled life insurance policies. In very general terms, the theory is that pooled life insurance policies should produce a steady flow of income because mortality tables predict when a life insurance policy will be paid out.

Ross filed a patent application for this business method in 1997. U.S. Patent No. 5,974,390 was issued to him in 1999, long before the Supreme Court threw cold water on most business method patents in *Bilski v. Kappos*, 561 U.S. 593 (2010), and *Alice Corp. v. CLS Bank Int'l*, 573 U.S. —, 134 S. Ct. 2347 (2014). The plaintiffs contend that several years later Ross sold that patent twice, once to Balshe LLC and The Simon Law firm and again to Meyer-Chatfield Corporation. In 2008, Balshe and Simon Law brought suit against Ross, alleging that he had failed to deliver the patent that he sold to them.

The parties soon reached a settlement. The parties to the settlement agreement were Ross, Balshe, and Simon Law, as well as Meyer-Chatfield, which was not a party to the original lawsuit but joined in the settlement agreement because it claimed an interest in the patent. The settlement agreement provided that the patent would be assigned to a new entity that would be managed jointly by Meyer-Chatfield, Balshe, and Simon Law. All the parties took equity interests in the new entity: Balshe and Simon Law received collectively a 45% voting equity interest, Meyer-Chatfield also received a 45% voting equity interest, and Ross received a 10% non-voting equity interest, giving him a share of net profits but no say in management.

Ross later filed a motion in the settled federal case claiming that the other parties had breached the settlement agreement and seeking the court's enforcement. Balshe and Simon Law also moved for enforcement against Ross, asserting he was in breach for withholding the patent. Those efforts to enforce the agreement led to dismissal for lack of jurisdiction because the district court did not retain jurisdiction to enforce the settlement. See *Balshe LLC v. Ross*, 441 Fed. App'x 395 (7th Cir. 2011). A few months later, plaintiffs Balshe, Simon Law, and Meyer-Chatfield filed this lawsuit against Ross alleging he had breached the settlement agreement by refusing to transfer his interest in the patent to the new entity. Plaintiffs invoked federal diversity-of-citizenship jurisdiction. As noted, the district court eventually granted summary judgment for plaintiffs and awarded damages of $250,000 for Ross's breaches of the settlement agreement. The damages were for attorney fees to enforce the agreement.

II. *Procedural Issues*

    A. *Appellate Jurisdiction*

We consider first our own jurisdiction. Ross filed two appeals. The first, No. 14-1274, is an appeal from a non-final order granting plaintiffs' motion for partial summary judgment but not resolving issues of damages or other relief. That appeal was clearly premature. The second appeal, No. 14-2497, is from the district court's order awarding $250,000 in damages. Unfortunately, there is no separate Rule 58 judgment in the district court's docket. Nonetheless, the district court made sufficiently clear that it believed it was done with the case. That is sufficient for an appealable final judgment because the absence of a Rule 58 judgment did not mislead or prejudice any party. See *Miller v. Artistic Cleaners*, 153 F.3d 781, 783–84 (7th Cir. 1998), citing *Bankers Trust Co. v. Mallis*, 435 U.S. 381, 387 (1978) (per curiam).

During oral argument we questioned whether the damages order was final because some language in the plaintiffs' motions for summary judgment on damages appeared to reserve the right to seek further damages. We are satisfied now, however, that plaintiffs were merely reserving the right to seek additional damages for any future breaches of the agreement. That prospect, of a new breach and a future lawsuit, does not prevent the judgment ordering Ross to pay plaintiffs $250,000 now, for past breaches, from being final and appealable. We have jurisdiction over the appeal of that order.

    B. *Subject-Matter Jurisdiction*

Diversity jurisdiction applies here: defendant Ross is a citizen of Massachusetts and no plaintiff is, and the amount in controversy exceeds $75,000. See 28 U.S.C. § 1332. Ross argues, however, that these plaintiffs are no longer the real parties in interest because they transferred their rights under the settlement agreement. We need not wrestle to the ground in this appeal the precise relationship between Federal Rule of Civil Procedure 17 (on real parties in interest) and subject-matter jurisdiction. See, e.g., *Spaine v. Community Contacts, Inc.*, 756 F.3d 542, 546 (7th Cir. 2014). The plaintiffs brought this suit to recover for breaches of a contract to which they were all parties, which more than satisfies their burden to show subject-matter jurisdiction, and Ross has simply never supported with evidence his theory that the plaintiffs no longer have enforceable rights. The district court had subject-matter jurisdiction.

    C. *Venue*

Ross next argues that the Northern District of Illinois was not a proper venue for this suit. He moved to dismiss the suit or transfer it to the District of Massachusetts pursuant to 28 U.S.C. § 1406(a). The district court found venue was proper in the Northern District of Illinois, and we agree. The venue statute provides in relevant part that "A civil action

may be brought in … a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred … ." 28 U.S.C. § 1391(b). Plaintiffs alleged and then offered uncontested evidence showing that a substantial part of the events that gave rise to this claim occurred in the Northern District of Illinois, as did the negotiations giving rise to the agreement. Venue was proper here.

III. *Merits of the Breach of Contract Claim*

Ross contends that the district court erred in granting summary judgment in favor of plaintiffs on their breach of contract claim. We review *de novo* the grant of summary judgment. *National Inspection & Repairs, Inc. v. George S. May Int'l Co.*, 600 F.3d 878, 882 (7th Cir. 2010). We consider first Ross's argument that he cannot be held liable for breach because the plaintiffs have not performed their own obligations under the agreement, then turn to his argument against the damages award.

A. *Plaintiffs' Performance*

The central feature of the settlement agreement is the promise by the parties to create a new company to exploit the patent. The parties share ownership of the company, though not in equal proportions: as noted, Meyer-Chatfield was granted a 45% voting equity interest, Balshe and Simon (referred to collectively as "Balshe" going forward) were granted a 45% voting equity interest, and Ross was granted a 10% *non-voting* equity interest.

Ross argues that the plaintiffs have not held up their end of the bargain because they inserted terms in the operating agreement for the new entity, Institutional Pooled Benefits LLC, that violate the settlement agreement to Ross's detriment. Four specific provisions are at issue. We address them in turn, but the basic problem with Ross's argument is that plaintiffs control management of the new entity. The settlement agreement did not prevent them from deciding questions as to which the settlement agreement was silent.

First, the operating agreement provides that Institutional Pooled Benefits may purchase the life insurance policies of trust participants when the participants are "not reasonably likely to pay the related upcoming premium payment" or the policies are "reasonably likely to lapse." This lapse provision enables the company to own and profit directly from policies that were previously pooled in a trust for the policy owners' profit.

Ross argues this provision violates the settlement agreement because the arrangement was never mentioned in that agreement. He calls the provision in the operating agreement a unilateral and unauthorized modification of the settlement agreement. We reject this argument. The settlement agreement does not require the operating agreement to contain identical language and expressly contemplates that

some details of the corporation still need to be hammered out. The settlement agreement provides: "The form and jurisdiction in which Newco will be organized/created shall be as mutually agreed to by Balshe and MC. The ownership and management of Newco shall be in accordance with this Agreement."

Ross has failed to show that the lapse provision violates the settlement agreement. The settlement agreement leaves management decisions to Balshe and Meyer-Chatfield. Ross shares in any profits of the business but has only a non-voting interest. And the settlement agreement provides that Balshe and Meyer-Chatfield shall have the "exclusive right to manage" the company's involvement in various types of life insurance policies that may be pooled in a trust. The plaintiffs' decision to enable the company to buy policies likely to lapse is an exercise of their management rights and is not inconsistent with the settlement agreement. Plaintiffs were entitled to summary judgment on this claim.

Ross next challenges a provision in the operating agreement that allows for the "direct purchase" of some life insurance policies by the corporate entity that Balshe designated to receive its interest in Institutional Pooled Benefits and the patent. He offers only the conclusory assertion that the provision violates the settlement agreement. He has failed to show that this provision in the operating agreement conflicts with the settlement agreement.

Ross objects next to the bankruptcy provision in the operating agreement, which he argues is asymmetrical and violates the settlement agreement. The operating agreement provides that Ross's membership interest in Institutional Pooled Benefits may be bought by the other company members if he becomes bankrupt. However, if any of the other corporation members become bankrupt, Ross is not given the option of purchasing their shares. Whether these terms are enforceable or not, the settlement agreement nowhere mentions what should happen if any member becomes bankrupt, so again there is no conflict.

Fourth, Ross challenges a provision in the operating agreement allowing up to $1 million of the distributable cash earned from Institutional Pooled Benefits' operations to repay the plaintiffs for their shared start-up costs. Ross argues that this violates the settlement agreement, which provided that "The Parties agree to share on a 50%/50% basis between Balshe and MC all expenses incurred after the date of this Agreement, which are necessary to develop the business of Newco, including, without limitation, the procurement of additional patents." Ross interprets this provision to mean that the plaintiffs kindly agreed to donate money to cover start-up expenses and waived any right to be repaid from the company's coffers. Ross says he is harmed by the

arrangement proposed in the operating agreement because repaying plaintiffs from the distributable cash will reduce the net profits, of which he is entitled to a 10% share.

This claim that the settlement agreement prohibits the repayment of start-up expenses out of corporate revenue is not tenable. Ross is entitled to 10% of net profits, revenue minus expenses. The start-up costs are company expenses that can be paid out of company revenue. Nothing requires the plaintiffs to pay the start-up costs without recovering them from the new entity.

B. *Damages Award*

The district court concluded that Ross was liable for breach of the settlement agreement because the plaintiffs had fully performed and Ross had breached the agreement by failing to transfer the patent. The plaintiffs moved for summary judgment on damages, asking for roughly $250,000 total in attorney fees and litigation costs incurred in pursuing the contract breach. The court held the plaintiffs' evidence detailing their attorney fees and litigation costs was undisputed and awarded summary judgment in favor of the plaintiffs for the full amount that they requested as contract damages.

Ross does not challenge any of the details in the calculation but argues that attorney fees are not damages. This argument is a non-starter. Plaintiffs sought relief under a contract provision authorizing recovery of attorney fees and related expenses incurred in enforcing the contract. The provision reads in full:

> Each party to this Agreement agrees to indemnify and hold each of the other parties to this Agreement harmless from and against any loss, damage (including incidental and consequential damages), deficiency, cost, expense (including costs of investigation and reasonable attorneys' fees) claims, actions or judgments, whether or not involving a third-party claim, resulting from: (i) its breach of any representation or warranty contained in this Agreement; and (ii) its failure to perform any of its obligations under this Agreement or any other agreement contemplated by this Agreement.

The damages from Ross's breach were the attorney fees and related expenses incurred in forcing him to comply with his side of the settlement agreement by transferring the patent to the new entity. The district court properly awarded the damages.[1]

The judgment of the district court is AFFIRMED.

---

[1] Ross also argues that the district court abused its discretion by allowing plaintiffs to file a late brief in opposition to his motion to dismiss, which was denied. Such case management are left to the discretion of the district court, see generally *Pioneer Investment Services Co. v. Brunswick Associates*, 507 U.S. 380, 388 (1993), and Ross has not shown any abuse of discretion here.